## ROWLEY & GAUZE *vs.* CUMMINGS & SPYKER.

Since the act abolishing imprisonment for debt, a defendant in attachment has a right to appear and plead without giving bond. This rule does not apply in cases of attachment for debts not due.

The defendant in attachment pleaded in abatement, the plaintiff demurred, and the defendant joined in the demurrer; it was held to be error to render a final judgment against the defendant, as on default, without disposing of the demurrer.

IN error from the circuit court of Warren.

The facts are given at length in the arguments of counsel and the opinion of the court.

*P. W. Tompkins* and *Alexander R. Depew,* for plaintiffs in error.

On the 14th of April, 1841, Shepherd Brown, as agent for defendants in error, sued out an attachment against the plaintiffs in error, for the sum of $189 $\frac{87}{100}$, with interest thereon, from the 29th October, 1838, alledged to be due by a judgment of the circuit court of Montgomery county, Alabama, on the ground as stated in the affidavit, that the plaintiffs in error " have both removed from the State of Mississippi, so that the ordinary process of law cannot be served on them."

The affidavit describes them as Robert C. Cummings and Leonard P. Spyker, merchants and partners in trade, under the name and style of Cummings & Spyker. The bond describes them as " Cummings & Spyker, partners and merchants in trade, and the writ of attachment describes them by the name of Cummings & Spyker, who are merchants and partners in trade." The declaration was filed on the 15th April, 1841, describing the defendants in error, as in the affidavit, but not as in the writ of attachment and bond, and the same day the writ of attachment was levied on a negro girl, named Rebecca, and her child, the property of James B. Rowley, one of the plaintiffs in error ; on the fifth day after the attachment was levied, an order

of publication was obtained from the Warren circuit court, then in session, at its April term, A. D. 1841, returnable on the 21st May, 1841, thirty days thereafter, at the same term of the making of the order. The order of publication states, " it appearing that the defendants are removing out of the State of Mississippi, so that the ordinary process of law cannot be served on them, they are notified to appear, &c., on, or before the 21st day of May next, 1841. On the 20th May, 1841, the order of publication was proved and filed in court. On the 17th of May, 1841, the plaintiffs in error filed their plea in abatement, which was sworn to in open court, and indorsed filed by the clerk; on the same day the defendants in error filed the special demurrer to said plea, and the plaintiffs in error filed their joinder in demurrer. On the 21st of May, 1841, judgment was rendered by default, (without deciding the issue on the demurrer,) for the defendants in error, for $246,$\frac{80}{100}$, and costs, against the plaintiffs in error.

We alledge that the proceedings of the court below, were erroneous, and should be reversed by this court.

1. Because there is a variance between the affidavit and attachment, and declaration and attachment in the description of the defendants in error.

2. Because there is a variance between the attachment and order of publication; the one alledging that the plaintiffs in error " have removed" from the State, &c., and in the other that they " are removing from the State," &c.

3. Because the order of publication was made returnable at the April term, 1841, the same term at which it was made by the court below.

4. Because the order of publication was returnable, and returned the latter part of the April term, 1841, (after the court had been more than four weeks in session,) and judgment rendered at the same term, thereby denying the plaintiffs in error the benefit of an imparlance term.

5. Because the process was not executed five days before the term at which the judgment was rendered.

6. Because the court below rendered judgment final against

the plaintiffs in error, without first having disposed of the issue on the demurrer to the plea in abatement.

7. Because the court did not, *ex officio*, quash the proceedings in the attachment. The plea in abatement, filed by the counsel for the plaintiffs in error, was in the nature of a motion to quash the proceedings in the attachment, for matters *de hors* the record, and according to the opinion of the judges, delivered *seriatim*, in the case of *Manty* v. *Hendley*, 2 Hen. and Munf. 312, &c. According to the same decision, the court below ought to have quashed, *ex officio*, for the errors apparent in the record.

The proceeding by attachment being in derogation of the common law, and so often abused by resorting to it improperly, and for purposes of oppression, the provisions of the attachment laws should therefore be strictly pursued. *Davis* v. *Edwards*, Hardin's Rep. 342. *Shipp* v. *Davis*, Ib. 65. *Barnard* et al. v. *Sebre*, 2 Marshall's Rep. 151. *Daniel* v. *Sappington*, Hardin, 94. *Cooper* v. *Logan*, printed decisions, Ky. 320. *Lewis* v. *Butler*, Ib. 290.

Numerous other cases might be cited to show the complaints which have been often repeated by most of the courts of the Union, of the great abuses of the statutory laws of attachment, and the frauds, perjuries and oppression, which are perpetrated under the pretence of resorting to the summary remedy of attachment. And perhaps no case more forcibly illustrates those abuses than the present.

On the 14th April, 1841, the attachment was issued on the ground, " that the plaintiffs in error had both removed out of the State, &c." On the 15th, the attachment was levied on a female slave, and her child, and they were put in jail. On the 18th, three days after the fact of the levying, and four after the issuing of the attachment, the order of publication was obtained in open court, on the ground that the plaintiffs in error were removing out of the State, &c. And on the 20th of April, that order was published returnable in thirty days. On the 19th of May, 1841, before the return day of the publication, a plea in abatement is filed on oath, by James B. Rowley, one of the plaintiffs in error, stating that at the time of issuing the attachment, he was a citizen and resident of Vicksburg, Mississippi ;

had a tavern, the Vicksburg Hotel, in full operation, when the attachment was sued out and plea filed, and that he was temporarily absent on business.  This plea was sworn to by the brother-in-law, and agent of said Rowley, who had charge of the Vicksburg Hotel for him.  Demurrer was filed to this plea, and issue joined, yet judgment was rendered for the debt and damages against the plaintiffs in error, without the disposing of the demurrer, notwithstanding the glaring illegality of the proceedings.

*R. Barnett*, for defendants in error.

In this case, there has been no assignment of errors by plaintiffs in error; hence the defendants in error labor under the disadvantage of being obliged to anticipate the probable grounds, which will be relied on by plaintiffs for the reversal of the judgment rendered in the court below.  It is presumed the plaintiffs will mainly rely for a reversal of the judgment, on account of its not appearing by the record, how the demurrer of the plaintiffs (below) to defendants (below) plea was disposed of by the court.

This suit was commenced by attachment against the plaintiffs in error, as absconding debtors.  They appeared at the-term of the court to which the process was returnable, without having given bail or security of any kind, as required by the statute. See How. & Hutch. Dig. § 15, p. 550.  Ib. § 23, p. 552.  It has never been allowed to defendants, whose effects are attached, to plead to the suit instituted by such attachment, without first giving bail or bond, with good security, &c.  See H. & H. § 15, p. 550, before referred to.  This has always been held a condition precedent to the permission of the defendant, to plead to the suit.  See Walker's Rep. p. 301, *Woolfolk* v. *Cage*.

It does not appear from the record in the case at bar, that the defendants below, offered to give bail or security of any kind—hence it is insisted that defendants below had no right to plead at all; and it is further insisted, that, even if they had given security, they could not have pleaded, as they did, that the writ of attachment was sued out upon false suggestions; i. e. that the defendants had not, and were not, removing.  If the plaintiffs

below had illegally, tortiously and maliciously sued out their attachment, the remedy of the defendants below, was upon the bond of the plaintiffs, given upon suing out the attachment. The condition of the bond provides for the payment of "all costs and damages that shall be awarded against the party taking out the process, in any suit or suits which may thereafter be brought for wrongfully suing out the attachment." See Condition of Attachment Bond, H. & H. Dig. pp. 551-2, § 19. It has been so decided in the State of Virginia, in relation to attachments under the statute of that State, of which ours is an exact transcript. See *Redford* v. *Winston*, 3 Rand. Rep. p. 155, and particularly the reasons of Green, justice, in delivering opinion in that case. See also, 7 Leigh's Rep. 660, *Olenger* v. *McHesney;* and Virginia Rep. vol. 1, pp. 34-5. *Smith* v. *Peace,* and same case in 6 Mun. 586.

The defendant in an attachment, upon giving security, relieves the property from the attachment, and the suit then proceeds as if originally instituted by *capias ad respondendum.* *Manley* v. *Henly*, 2 Hen. & Mun. 308, cited in Robinson's Practice, vol. 1, p. 627. Walker's Rep. p. 301 ; opinion by Justice Turner, before cited. Until such security is given, the proceeding is "*in rem*," and governed, in all respects, as such. The defendants have no right to be heard until security is given. In the present case, the court below being of opinion that the plea of the defendants (they not having given security as by statute required) was a nullity—gave the plaintiffs below, a judgment for their debt, as proved to be due—notice of publication, as required by law, being also proved. Such are the facts of the case, although the record is encumbered with the pleas of the defendants below, and the plaintiffs demurrer thereto, neither of which were ever regarded by the court below, but appear in the record, from the careless habit of our circuit clerks, and their not being required to keep a rule book for making up the pleadings in every case, formally, from beginning to end; the clerks always considering all the papers in "the bundle," as part of the record, whether so deemed by the court or not. But admitting, *arguendo*, that the defendants below could have filed

the plea they did, i. e. a plea in abatement—it is insisted that the plea in abatement, by them filed, (being wholly defective both in substance and form) must necessarily have been adjudged bad upon demurrer. The special causes assigned by the plaintiffs below, are sufficient to show that, nor could a second plea in abatement be allowed. The judgment of the court, then, on the demurrer, being for the plaintiffs below, there could not (as in ordinary cases) have been a judgment of " *respondeat ouster*," because the defendants below had not put themselves in a situation to plead the merits at all, they not having given security—the language of the statute being, " If plaintiff demur to defendant's plea, and the demurrer be sustained, the judgment shall be *respondeat ouster*, but in such case the defendant shall be compelled to plead to the merits of the suit or action, and the plaintiff shall not thereby be delayed of his trial." H. & H. pp. 615–16. Here the court will perceive, that if the defendants below, in the case at bar, had a right to plead over, it was only upon condition that they did so immediately, and the plaintiffs were not to be delayed in the trial. It is obvious that the plaintiffs below were not bound to wait a single moment for the defendants below to plead; and they (the defendants) not having given security, could not plead to the merits (if at all) until they had done so. Was it then error in the court below to give a judgment for the plaintiffs in that court? It is insisted that it was not erroneous, but, under the peculiar circumstances of the case, perfectly right and proper. The judgment of the court must necessarily have been, that the plaintiffs recover, as appears from the record it was. But the appellate court may presume that the demurrer was sustained by reason of the plaintiffs having judgment. See 6 Rand. Rep. pp. 8, 10 & 12, *Cooke* v. *Thornton.* See opinion of Green, justice, in case cited page 11, and Cabell, justice, in same case, page 15; especially as the court must see, that, in the present case, the demurrer was properly sustained, and the justice of the case effected.

PER CURIAM. The defendants in error, sued out an attachment against the plaintiffs in error, which was levied on property

belonging to Rowley, which he failed to replevy.    At the return term he appeared, by his attorney, and pleaded in abatement, that he had not absconded, so the ordinary process of law could not be served upon him, but was still a citizen of Warren county, Mississippi.    To this plea the plaintiffs demurred, but without disposing of the demurrer, the court rendered a final judgment as on default, paying no attention to the plea, and the question is, was it error to do so ?

It was formerly the settled rule in this State, that a defendant in attachment could not plead to the action until he had replevied or given special bail.    Under that rule, the judgment would have been right; but this rule is changed by the act abolishing imprisonment for debt. In the case of *Garret* v. *Tinnen*, decided at the last term, we held that the bond which a defendant in attachment was required to give the sheriff to release the property, was, in effect, nothing more than a special bail bond, and that as bail could not be required, so much of the law in relation to attachments as required such a bond, was virtually repealed.    This being the case, the defendants in attachment had a right to appear and plead without giving the bond, and having done so, the court could not render a judgment by default, in the face of the plea.    If the plea had been a nullity, it might have done so, but we are not prepared to say that this was one of that description.    The plaintiff did not so treat it, but demurred, which demurrer should have been disposed of.    The above rule does not apply in cases of attachment for debts not due, as was decided in the case referred to.

*Judgment reversed and cause remanded.*